No. 91,271

STATE OF KANSAS, *Appellee*, v. LARRY WALKER, *Appellant*.

(124 P.3d 39)

Opinion filed December 9, 2005.

*Michelle A. Davis*, assistant appellate defender, argued the cause, and *Libby K. Snider*, assistant appellate defender, was on the brief for appellant.

*Thomas R. Stanton*, deputy district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This case comes before us on our grant of defendant Larry Walker's petition for review of the Court of Appeals' decision in *State v. Walker*, No. 91,721, unpublished opinion filed January 14, 2005. The question presented is whether the provisions of K.S.A. 2004 Supp. 21-4720(b)(2) require a sentencing court, when sentencing a defendant for multiple felony convictions, to designate the defendant's severity level 1 crime, which according to the decision in *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002), is sentenced as a severity level 4 crime, as the primary crime. The trial court designated the defendant's severity level 2 crime as the primary crime. On petition for review, we affirm the Court of Appeals' decision affirming the trial court.

Pursuant to a plea agreement, the defendant pled no contest to the amended charges of possession of ephedrine or pseudoephedrine with intent to use to manufacture a controlled substance (K.S.A. 65-7006), a severity level 1 drug felony; possession of methamphetamine with intent to sell within 1,000 feet of a school (K.S.A. 65-4161), a severity level 2 drug felony; possession of methamphetamine (K.S.A. 65-4160), a severity level 4 drug felony; and

possession of drug paraphernalia with intent to use to manufacture a controlled substance (K.S.A. 65-4152), a severity level 4 drug felony.

Acknowledging that the possession of ephedrine or pseudoephedrine with intent to use to manufacture a controlled substance must be sentenced as a severity level 4 felony under *Frazier*, the sentencing court utilized the presumptive range for a severity level 4 drug felony with a criminal history score of H, 10-12 months, rather than the range for a severity level 1 drug felony, 142-161 months. The trial court accordingly designated the severity level 2 felony as the primary crime, which carried a presumptive range of 49-54 months.

The defendant appealed, arguing the severity level 1 drug felony of possession of ephedrine or pseudoephedrine with intent to use to manufacture a controlled substance should have been designated the primary crime, even though it was sentenced as a severity level 4 crime pursuant to *Frazier*. In rejecting this argument, the Court of Appeals reasoned:

"We are satisfied that the trial court followed the proper statutory procedure in determining the primary crime. Walker was sentenced for the offense of possession of ephedrine or pseudoephedrine as if he was convicted under K.S.A. 65-4152(a)(3). See K.S.A. 65-4152(c) (violation of subsection [a][3] is a drug severity level 4 felony); 30 Kan. App. 2d at 404-06. As a result, Walker's conviction of possession of methamphetamine with intent to sell within 1,000 feet of a school became his primary crime. See K.S.A. 65-4161(d) (classifying crime as drug severity level 2 felony); K.S.A. 2003 Supp. 21-4720(b)(2) (defining primary crime as crime with highest severity ranking.)" *Walker*, slip. op. at 5.

The defendant's petition for review of the Court of Appeals' decision was granted by this court pursuant to K.S.A. 20-3018(b).

Discussion and Analysis

The interpretation of a statute is a question of law subject to unlimited review. *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005). The defendant argues that the Court of Appeals ignored the plain language of K.S.A. 2004 Supp. 21-4720(b)(2), which required the sentencing court to designate the severity level 1 crime as the primary crime instead of the severity level 2 crime

which the sentencing court used. K.S.A. 2004 Supp. 21-4720(b)(2) specifies that the primary crime is the crime with the highest crime severity ranking:

"The sentencing judge must establish a base sentence for the primary crime. *The primary crime is the crime with the highest crime severity ranking.* An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences. If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime. If more than one crime of conviction is classified in the same crime category, the sentencing judge must designate which crime will serve as the primary crime. In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of imprisonment and probation, the sentencing judge will use the crime which presumes imprisonment as the primary crime. In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of either both probation or both imprisonment, the *sentencing judge will use the crime with the longest sentence term within the grid block range as the primary crime.*" (Emphasis added.)

There is no dispute in this case that *Frazier* required the sentencing court to sentence the defendant to no more than could be imposed for a severity level 4 crime notwithstanding the crime's designation as a severity level 1 crime. However, the defendant argues that the district court misinterpreted *Frazier* as holding that the crime severity level of possession of ephedrine or pseudoephedrine *changed* the crime severity level to a severity level 4 crime. The defendant contends it is up to the legislature, not the courts, to determine crime severity levels. Thus, according to the defendant, his possession of ephedrine or pseudoephedrine conviction remained a severity level 1 drug crime and should have been designated as his primary crime under K.S.A. 2004 Supp. 21-4720(b)(2) to which his full criminal history score of H applied.

The State responds that the defendant wants to take advantage of *Frazier* by having his sentence reduced from a severity level 1 felony sentence to a severity level 4 felony sentence and then claim a second benefit by having that reduced sentence be classified as the base sentence. The State argues it is "ridiculous" to believe that the base sentence can be 36 months less than the nonbase

sentence and the clear legislative intent of K.S.A. 2004 Supp. 21-4720(b)(2) is that the base sentence should be the sentence with the longest prison term.

The Court of Appeals' opinion in this case did not offer a clear explanation for affirming the trial court's use of the severity level 2 crime as the primary crime instead of the severity level 1 crime. However, its conclusion treating the defendant as if he were convicted of the severity level 4 drug crime of possession of drug paraphernalia, coupled with its failure to discuss the plain language ("[t]he primary crime is the crime with the *highest* crime severity ranking" [emphasis added]) or the legislative intent of K.S.A. 2004 Supp. 21-4720(b)(2), suggests the court believed that applying *Frazier* actually changes the severity level of the crime of conviction (possession of ephedrine or pseudoephedrine) or does so for purposes of sentencing only.

Two other Court of Appeals' panels have reached similar results as the panel in this case with little analysis. In *State v. Krankenberg*, No. 91,533, unpublished opinion filed March 18, 2005, Krankenberg argued the trial court erred in designating his possession of methamphetamine conviction, a severity level 3 felony, as the primary crime when he was also convicted of possession of ephedrine and possession of lithium, severity level 1 felonies. The panel rejected this argument, reasoning: "Simply put, possession of ephedrine or pseudoephedrine and possession of lithium are level 4 felonies. See *Frazier*, 30 Kan. App. 2d at 405-06. Nothing in *Frazier* suggests these crimes retain their severity rankings for the purpose of establishing the primary crime under K.S.A. 2004 Supp. 21-4720." *Krankenberg*, slip. op. at 2.

In *State v. Williams*, No. 90,473, unpublished opinion filed July 30, 2004, *rev. denied* 279 Kan. 1010 (2005), the court rejected a similar argument, reasoning: "When Williams' conviction for possession of pseudoephedrine was lowered by the court to a level 4 drug crime [pursuant to *Frazier*], his conviction for possession of methamphetamine with two prior convictions, a level 1 drug crime, by definition became his primary sentence." *Williams*, slip. op. at 2-3.

However, a review of case law decided by this court involving the identical offense rule set forth in *Frazier* supports the conclusion that the original severity level 1 drug crime remains a severity level 1 drug crime and only the length of the sentence imposed is reduced to the least of the penalties of the two identical offenses.

In *State v. Clements*, 244 Kan. 77, 734 P.2d 1096 (1989), the defendant was convicted of aggravated criminal sodomy and he argued on appeal that the trial court should have instructed the jury on indecent liberties with a child as a lesser included offense. The State conceded that the allegations would have supported a charge of either aggravated criminal sodomy or indecent liberties with a child and that the two offenses were identical except as to the applicable penalty. This court concluded:

"Where identical offenses are involved, the question is not truly a matter of one being a lesser included offense of the other. Each has identical elements and the decision as to which penalty to seek cannot be a matter of prosecutorial whimsy in charging. As to identical offenses, a defendant can only be sentenced under the lesser penalty. Here, it would have been the better practice to have instructed on indecent liberties with a child, but the error could have been remedied by sentencing defendant as having been convicted of a class C felony rather than a class B felony. Accordingly, the sentence imposed herein must be vacated." 241 Kan. at 83.

Likewise, in *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), the defendant was convicted of aggravated criminal sodomy, a class B felony, for conduct which was also proscribed by the statute defining the offense of indecent liberties with a child, a class C felony. Relying on *Clements*, the court remanded to the trial court with directions to correct the sentence imposed to conform to the penalties for a class C felony rather than a class B felony, reasoning: "Where two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision." *Nunn*, 244 Kan. at 228-29.

More recently in *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004), the defendant was convicted of conspiracy to unlawfully manufacture methamphetamine and was sentenced for a severity level 1 drug felony pursuant to K.S.A. 65-4159(a). This court found

that manufacturing methamphetamine, a severity level 1 drug felony, and compounding a stimulant or drug, a severity level 3 drug felony, were identical under the facts of the case. As such, the defendant could be sentenced only under the lesser penalty provision of the severity level 3 drug felony. 277 Kan. at 142-47.

In *State v. Barnes*, 278 Kan. 121, 92 P.3d 578 (2004), Barnes argued his conviction for aiding and abetting the manufacture of methamphetamine, a severity level 1 drug felony, should have been sentenced as a severity level 3 drug felony under *McAdam*. In determining whether the sentence was illegal, the *Barnes* court found that the sentence imposed in *McAdam* was not unconstitutional; rather, "the problem when two statutes have identical elements but carry different penalties is that 'the decision as to which penalty to seek cannot be a matter of prosecutorial whimsy in charging.' " 278 Kan. at 123.

Also relevant to this case, the court found that Barnes' sentence for the severity level 1 drug felony was not illegal because the district court had jurisdiction to find Barnes guilty and impose sentence, the sentence conformed to K.S.A. 65-4159 as to both its character and term of punishment, and the sentence was not ambiguous in the time or manner in which it was to be served. 278 Kan. at 124. Nevertheless, the court concluded that Barnes should have been sentenced for a severity level 3 drug felony. 278 Kan. at 129-30.

In *State v. Campbell*, 279 Kan. 1, 106 P.3d 1129 (2005), this court considered an appeal from a Court of Appeals' decision which had concluded that possession of ephedrine or pseudoephedrine and possession of drug paraphernalia were not identical offenses, thereby declining to follow *Frazier*. In reversing, this court found that the elements of the offenses were the same where the elements were knowingly possessing ephedrine or pseudoephedrine with the intent to use it to manufacture a controlled substance. The court remanded to the district court to resentence Campbell "to a drug severity level 4 felony as provided for a violation of [the drug paraphernalia statute.]" 279 Kan. at 17.

Finally, *State v. Boley*, 279 Kan. 989, 991-93, 113 P.3d 248 (2005), while not on point, suggests that the severity level of the

charged crime in an identical offense case remains the same but the length of the sentence is reduced to the least penalty of the two identical offenses. In commenting on this aspect of the case and a plea agreement wherein Boley agreed to plead to a severity level 1 crime, this court said that "[t]he State's argument [severity level 1 was the heart of the State's agreement] blurs the distinction between the conviction and the sentence. Boley's conviction [severity level 1] stands; what changes is the length of his sentence." 279 Kan. at 993.

Review of *Clements, Nunn, McAdam, Barnes, Campbell,* and *Boley* supports the conclusion that the purpose of the identical offense rule is not to alter the severity level of the crime of conviction, but to prevent unfettered prosecutorial discretion in choosing which offense to charge. Moreover, none of the above cases explicitly provide that the severity level of the crime of conviction is changed when a defendant has been convicted of the more severe of identical crimes; in fact, *Barnes'* holding that a sentence imposed in accord with the higher severity level is not illegal or unconstitutional suggests otherwise. However, none of the cases discussed above provide that the crime of conviction retains its severity level for purposes of establishing a base sentence when the defendant is sentenced to the lesser penalty.

In *Carmichael v. State,* 255 Kan. 10, 19, 872 P.2d 240 (1994), this court imposed a similar sentencing remedy in the context of general versus specific crimes. *Carmichael* held that the proper remedy for Carmichael being charged and convicted of the general crime of rape of his daughter rather than the specific crime of aggravated incest was "to vacate the sentence imposed for rape and resentence the petitioner for aggravated incest." In *Beem v. McKune,* 317 F.3d 1175, 1180-81 (10th Cir. 2003), the Tenth Circuit Court of Appeals considered whether the *Carmichael* remedy truly results in a sentence *for* aggravated incest, which would require jury findings on all elements of that crime, or whether instead the remedy merely results in a reduced sentence for the crime of conviction, *i.e.,* rape or indecent liberties with a child, albeit one that is determined *by reference* to the penalty range for aggravated incest.

The Tenth Circuit upheld the constitutionality of the *Carmichael* remedy by characterizing it as "merely a sentence reduction remedy" which "(1) leaves intact the conviction for the general sex crime and (2) reduces the sentence for the general sex crime by *reference* to the allowable penalty range for aggravated incest." 317 F.3d at 1181. In reaching this conclusion, the court relied in part upon the fact that the court was correcting an illegal sentence which did not conform to the statutory provisions, either in the character or the term of punishment authorized. 317 F.3d at 1181.

*Carmichael* and *Beem* are obviously distinguishable from this case in that they involve the interplay of general and specific crimes and a resulting illegal sentence; however, the Tenth Circuit's handling of this court's imposition a lesser sentencing penalty for a higher severity level crime of conviction in *Carmichael* bears noting. *Carmichael* and *Beem* also lend support for the conclusion that sentencing a defendant in accord with *Frazier* leaves intact the severity level 1 crime of conviction but reduces the sentence *by reference* to the penalty range for possession of drug paraphernalia, a severity level 4 drug crime. We thus conclude that application of *Frazier* does not actually change the severity level of the crime of conviction but is merely a "sentence reduction remedy."

While application of *Frazier* does not change the severity level of the crime of conviction, we cannot ignore the reality of the situation in this case that in sentencing the defendant by reference to the penalties of possession of drug paraphernalia, the defendant was sentenced as if he were convicted of a severity level 4 drug felony, with a presumptive range of 10-12 months, rather than a severity level 1 drug felony, with a presumptive range of 142-161 months.

The State does not dwell on whether the crime severity level of possession of ephedrine or pseudoephedrine is changed or changes for all practical purposes under *Frazier*; rather, it focuses on the legislative intent of the sentencing statute. It contends that the legislature clearly intended that the primary crime be the crime of conviction with the longest sentence under K.S.A. 2004 Supp. 21-4720(b)(2).

The meaning of a particular statute is dependent upon the intent of the legislature. *McCurry*, 279 Kan. at 121. In ascertaining this intent, we turn to the following rules of statutory construction:

"The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, *and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.* Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. The legislative intent is to be determined from a general consideration of the entire act, and effect must be given, if possible, to the entire act and every part thereof, and it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." (Emphasis added.) *State v. Sedillos*, 279 Kan. 777, Syl. ¶ 2, 112 P.3d 854 (2005).

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof in pari materia. When the interpretation of some one section of an act according to the *exact* and *literal* import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the *literal* import of words or phrases which conflict with the manifest purpose of the legislature." (Emphasis added.) *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 4, 874 P.2d 612 (1994).

The State does not address the defendant's argument that this case is resolved by the plain and unambiguous statutory language but moves directly to the intent of the legislature as gleaned from the statute as a whole. However, under our rules of statutory construction, our first consideration is whether the language used by the legislature is plain and unambiguous. No question exists that the plain language of K.S.A. 2004 Supp. 21-4720(b)(2) provides: "The primary crime is the crime with the highest crime severity level ranking." At first blush, this language appears clear and unambiguous indicating a legislative intent to make the primary crime the crime of conviction with the highest severity level, which normally would be the crime with the longest sentence. However, the facts of this case do not present the typical situation where the severity level of the crime of conviction is commensurate with the

sentence. Under these circumstances, we conclude that the construction of the statutory language is uncertain or ambiguous as applied to the facts of this case, where the severity level of the crime of conviction does not match the sentence to be imposed.

We may therefore consider other factors in determining the legislative intent of the statute. For example, K.S.A. 2004 Supp. 21-4720(b)(2) further provides that where there are multiple convictions on both the drug and nondrug grids, the primary crime will be the conviction with "the longest sentence term." Although this case involves convictions on the same grid, presumably this clear legislative intent that the primary crime be the conviction with the longest sentence term would remain the same. The fact that this subsection of the statute does not contain a similar provision regarding crimes on the same grid does not demonstrate an intent that those crimes be treated differently; rather, it just reflects the fact that ordinarily, the crime with the highest severity level on the drug grid would have the longest sentence. See K.S.A. 2004 Supp. 21-4720(b)(2).

Additionally, as in this case where the defendant's possession of ephedrine or pseudoephedrine conviction retains its severity level 1 ranking, if such a severity level ranking were to be used as the primary crime for sentencing purposes under K.S.A. 2004 Supp. 21-4720(b)(2), unreasonable results would arise. See *State v. Deffebaugh*, 277 Kan. 720, 722, 89 P.3d 582 (2004) ("Courts should construe statutes to avoid unreasonable results, presuming that the legislature does not intend to enact useless or meaningless legislation."). For example, if the defendant's possession of ephedrine or pseudoephedrine conviction retains its severity level 1 ranking for sentencing purposes and becomes the primary crime under K.S.A. 2004 Supp. 21-4720(b)(2), the defendant's base sentence would then be *presumptive probation* and considerably shorter (12-14 months) than the nonbase sentence which would be imposed for his severity level 2 conviction for possession of methamphetamine with intent to sell (46-51 months). See K.S.A. 2004 Supp. 21-4705.

Although the severity level 2 conviction would fall in the presumptive prison box, it along with the other two severity level 4

convictions, possession of methamphetamine and possession of drug paraphernalia, would likewise have to be sentenced as nonprison terms. See K.S.A. 2004 Supp. 21-4720(b)(8) ("If the sentence for the primary crime is a nonprison sentence, a nonprison term will be imposed for each crime conviction, but the nonprison terms shall not be aggregated or served consecutively even though the underlying prison sentences have been ordered to be served consecutively.").

It is illogical to assume that the legislature intended to establish a presumptive probation base sentence to a defendant who was also convicted of a drug severity level 2 presumptive imprisonment crime. Compare K.S.A. 2004 Supp. 21-4720(b)(2) ("In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of imprisonment and probation, the sentencing judge will use the crime which presumes *imprisonment* as the primary crime." [Emphasis added.]). This provision demonstrates a clear legislative intent that the primary crime be the crime with presumptive imprisonment rather than presumptive probation.

If we were to adopt the defendant's position, another absurd and unreasonable result would be the application of the double sentence rule of K.S.A. 2004 Supp. 21-4720(b)(4) to this case. The double sentence rule provides that in cases where sentences for multiple convictions are imposed consecutively, the total controlling sentence cannot exceed twice the base sentence. If the possession of ephedrine or pseudoephedrine conviction were designated as the primary crime in this case, the double sentence rule would be violated because two times the maximum base sentence of 14 months would cap the total sentence at 28 months—when the presumptive nonbase sentence for the severity level 2 conviction alone would be 46-51 months. See K.S.A. 2004 Supp. 21-4705. Surely the legislature did not intend that K.S.A. 2004 Supp. 21-4720(b)(2) be interpreted in such a way that its application would automatically violate the provisions of K.S.A. 2004 Supp. 21-4720(b)(4).

Thus, when K.S.A. 2004 Supp. 21-4720(b)(2) is read in conjunction with the rest of the statute and K.S.A. 2004 Supp. 21-

4705, it is clear that the statute was drafted with the intention that the primary crime would be the crime of conviction with the longest and most severe sentence. Interpreting the provision that "the primary crime is the crime with highest severity level ranking" in this case literally without taking into account the sentence actually imposed would contravene the manifest purpose of the legislature and lead to absurd and unreasonable results. In order to effect the legislative intent, we interpret the provisions of K.S.A. 2004 Supp. 21-4720(b)(2) to require the primary crime to be the crime of conviction with the highest severity level ranking which is *actually* sentenced using that severity level's applicable penalties to effect imposition of the longest sentence provided under the sentencing guidelines.

In conclusion, application of *Frazier* does not change the severity level of possession of ephedrine or pseudoephedrine conviction from a severity level 1 drug crime to a severity level 4 drug crime. However, under the circumstances of this case, we interpret the provisions of K.S.A. 2004 Supp. 21-4270(b)(2) to require that the primary crime be the crime of conviction with the highest severity level ranking which is *actually* sentenced, using that severity level's applicable penalties to effect the legislative intent that the primary crime be the crime with the longest sentence imposed under the sentencing guidelines. This interpretation avoids any unreasonable and absurd results. Thus, we conclude that the district court's designation of the primary crime under the facts of this case was appropriate and must be affirmed.

Affirmed.

LOCKETT, J., Retired, assigned.