NOT DESIGNATED FOR PUBLICATION

No. 120,936

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK A. NEWBORN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 12, 2020.
Affirmed.

*Wendie C. Miller*, of Kenneth B. Miller, Atty at Law, LLC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: Patrick Newborn pleaded guilty to aggravated indecent liberties with
a child. He later filed a K.S.A. 60-1507 motion alleging his counsel had been ineffective
in a number of respects, both before and after his plea. The district court summarily
denied most of the claims in his motion but held a hearing on Newborn's assertion that
his counsel had coerced him into entering a guilty plea. After hearing Newborn's and his
trial attorney's testimony, the court found Newborn had not shown ineffective assistance
of counsel and denied his remaining claim. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May 2012, the State charged Newborn with two counts of aggravated indecent liberties with a child. The information alleged that he, along with his father and several other individuals, had sexual intercourse with a 15-year-old girl.

The case was scheduled for a preliminary hearing. But on the day of the hearing, before the State called any witnesses, Newborn's attorney informed the court he "acknowledge[d] receipt of the complaint/information, waive[d] formal reading thereof and enter[ed] pleas of not guilty[,] and request[ed] a jury trial." The court also addressed Newborn directly to confirm he wished to proceed to trial without a preliminary hearing:

> "THE COURT: You understand your case is set today for a preliminary hearing and if you waive it you give up that right and there will be no hearing conducted. I'll find there's probable cause on the violations and schedule a trial date. You understand that?
> "[NEWBORN]: Yes, Your Honor."

Newborn and his counsel had discussed continuing the trial until a favorable plea deal could be negotiated with the State. Several months later, Newborn filed, and then withdrew, a pro se motion to dismiss his counsel. The withdrawn motion indicated there had been a breakdown of communication between Newborn and his attorney. It further alleged the attorney had continued his case several times without Newborn's approval.

The district court granted additional continuances as a plea deal was worked out. Newborn eventually pleaded guilty to one count of aggravated indecent liberties with a child in exchange for the dismissal of the second count. The State also agreed to recommend the low number in the applicable grid box; Newborn was free to seek an alternative disposition at sentencing.

During the plea hearing, the court asked Newborn whether his attorney had fully discussed the charges and plea agreement with him, whether he understood the constitutional rights he was giving up, whether he understood the consequences of his plea, and whether he was satisfied with his representation. He answered "Yes" to each question. The court also asked whether Newborn had any complaints about his counsel; he replied, "No." Newborn stated that he could read and understand English and was not under the influence of any medications or other intoxicants. During the colloquy, the district court asked Newborn:

> "THE COURT: Do you understand the plea agreement?
>
> "[NEWBORN]: A little bit, yeah.
>
> "THE COURT: Well, we need you to understand it more than just a little bit. Do you understand all of the plea agreement?
>
> "[NEWBORN]: Yes.
>
> "THE COURT: You heard her read all of the terms of that plea agreement into the record, didn't you?
>
> "[NEWBORN]: Yes, Your Honor.
>
> "THE COURT: Anything about that plea agreement that you don't understand?
>
> "[NEWBORN]: No. I understand it.
>
> "THE COURT: Did you discuss that plea agreement with your attorney?
>
> "[NEWBORN]: Yes, Your Honor.
>
> "THE COURT: She went over that entire form with you that says 'Plea Agreement' on there?
>
> "[NEWBORN]: Yes, Your Honor."

Newborn went on to state that he did not think he was getting a very good deal, but he "just wanted this to be over with. You know what I mean?" Newborn's attorney then noted that they would argue for an alternative disposition at sentencing; Newborn verbally agreed with this approach and conceded the plea deal was in his best interests.

At sentencing, Newborn requested a departure sentence based on his cooperation with law enforcement, his acceptance of responsibility, the availability of treatment programs, and the fact that the "victim was a willing participant." The district court denied Newborn's departure motion and sentenced him to 74 months' imprisonment (the low number from the applicable sentencing guidelines grid box) followed by 36 months' postrelease supervision.

Newborn appealed, contesting his criminal history and an order that he pay $100 toward his attorney's fee. This court affirmed. See *State v. Newborn*, No. 109,868, 2014 WL 3292125 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1018 (2015). During the pendency of his appeal, the district court resentenced Newborn to correct his postrelease supervision from a 36-month term to lifetime supervision.

Newborn subsequently filed a K.S.A. 60-1507 motion, raising several claims of ineffective assistance of counsel. The district court held an evidentiary hearing on one of his claims—that his attorney allegedly coerced his plea—and summarily denied the others. After reviewing the pleadings, records, and testimony, the court denied Newborn's K.S.A. 60-1507 motion in its entirety. Newborn appeals.

DISCUSSION

K.S.A. 2019 Supp. 60-1507(a) provides a collateral vehicle for those convicted of crimes to challenge the fairness of the underlying proceedings. A court considering a K.S.A. 60-1507 motion may take three courses of action, depending on the motion's contents. First, the court may summarily deny the motion without a hearing if the motion, files, and records from the case conclusively show the movant is not entitled to relief. Second, the court may order a preliminary hearing and appoint the movant counsel if a potentially substantial issue exists. Third, when "the motion and the files and records of the case" do not "conclusively show that the prisoner is entitled to no relief," the court

4

must hold an evidentiary hearing. K.S.A. 2019 Supp. 60-1507(b); see *Hayes v. State*, 307 Kan. 9, 12, 404 P.3d 676 (2017).

To warrant an evidentiary hearing, a movant must first make a prima facie showing that his or her claims are colorable by demonstrating a possible evidentiary basis for his or her assertions. See *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). When a court has ruled on a K.S.A. 60-1507 motion after an evidentiary hearing, appellate courts review the district court's factual findings for substantial competent evidence and its conclusions of law and ultimate decision via a de novo review. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018); *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007). This court will not reweigh evidence, reassess credibility determinations, or resolve evidentiary conflicts; rather, we give deference to the district court's factual findings. *White*, 308 Kan. at 504; *Bellamy*, 285 Kan. at 355.

When the district court has denied a K.S.A. 60-1507 motion based only on the motions, files, and records—with or without a preliminary hearing—the appellate court is in just as good a position as the district court to consider the merits. We thus review such rulings de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

1. *The court's factual findings discounting Newborn's claim that his counsel coerced his plea are supported by substantial competent evidence.*

We consider first the claim on which the district court held an evidentiary hearing—Newborn's assertion that his trial counsel coerced him into accepting a plea instead of letting his case proceed to trial. Newborn's motion alleged that his attorney coerced him into entering his guilty plea by misleading him about the nature of the sentence he faced, leading him to believe he could face a 247-month prison sentence when the maximum prison sentence he could receive given his criminal history was 96 months. Newborn's motion also alleged that he had a learning disability that prevented him from understanding the plea process. After reviewing the record and transcript of the

original plea hearing and listening to the testimony of Newborn and his trial counsel, the district court denied Newborn's claim, finding his attorney was not ineffective and his plea was not the product of coercion or misinformation.

At the hearing, Newborn's counsel also argued for the first time that Newborn had been misinformed that he faced a 36-month term of postrelease supervision, not lifetime postrelease supervision. See K.S.A. 2019 Supp. 22-3210(a)(2), (d); *State v. Barahona*, 35 Kan. App. 2d 605, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006); *State v. Metzger*, No. 115,056, 2017 WL 2838268 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 992 (2018). In denying Newborn's motion, the district court found his postrelease supervision claim was not properly before it since that claim was not included in his original motion. We agree. Although Kansas courts have recognized that a district court may allow a defendant to withdraw a plea based on allegations in a K.S.A. 60-1507 motion, the problem here is that Newborn did not raise the particular claim regarding his postrelease supervision until the evidentiary hearing. Thus, this claim cannot be bootstrapped to the claims of ineffective assistance of counsel raised in that motion and was untimely under the one-year limitation in K.S.A. 60-1507(f). See *Thompson v. State*, 293 Kan. 704, 713-14, 270 P.3d 1089 (2011); *State v. Pabst*, 287 Kan. 1, 25-26, 192 P.3d 630 (2008). If Newborn wishes to present this question, he should do so in a postsentence motion to withdraw a plea under K.S.A. 2019 Supp. 22-3210.

We thus turn to Newborn's claims that his counsel coerced him into entering a plea agreement he did not understand. To establish ineffective assistance of counsel, Newborn was required to show that his trial counsel provided deficient representation that prejudiced his rights and affected the outcome below. See *Mundy v. State*, 307 Kan. 280, 296, 408 P.3d 965 (2018) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). We presume counsel's conduct fell within the range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014). Thus, to prevail on an ineffective assistance of counsel claim, Newborn must

6

demonstrate errors so serious that counsel's performance fell below the standard guaranteed by the Sixth Amendment. *Mundy*, 307 Kan. at 296. And he must show a reasonable probability that, but for his counsel's allegedly deficient performance, the outcome of the proceeding would have been different. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014). Because Newborn alleges ineffective assistance of counsel in the context of his guilty plea, he must show that his attorney's performance fell below the standard of reasonableness and that, but for those errors, he would have insisted on going to trial. *Kelly*, 298 Kan. at 970.

Newborn argues that his trial counsel coerced his guilty plea by leading him to believe he faced a sentence of 247 months' imprisonment if the case were to proceed to trial. This sentence would have only applied if Newborn had a criminal history of A, which he did not. He also claims that he entered his plea thinking he would receive a prison sentence of 3 or 4 years, not the 74-month (or just over 6-year) sentence the court ordered. Newborn asserts his trial counsel only briefly talked to him about the plea agreement; he also states his learning disability prevented him from understanding the plea process and at the hearing merely said what he thought the judge wanted to hear.

Newborn and his trial counsel testified at the evidentiary hearing. Both Newborn and his attorney testified to their overall strategy of angling to obtain the best plea deal possible—aiming for a plea that would allow for a sentence of three to four years in prison. But while other people, including Newborn's father, were able to negotiate pleas that led to shorter prison sentences, Newborn's trial attorney explained that Newborn's case was different—and the State's claim against him stronger—because he had admitted to having sex with the victim. The attorney testified that she had advised Newborn that a plea deal was likely his best option in light of his admission. She also indicated that Newborn had expressed a desire to enter a plea from the first time she met with him.

7

Newborn's attorney testified that she had succeeded, through multiple conversations with the prosecutor, to have the State dismiss one of its two charges of aggravated indecent liberties with a child, leaving only one remaining charge. She testified that Newborn was not sure about his criminal history, so she explained the entire range of potential presumptive sentences—from 55 to 247 months in prison—for the aggravated indecent liberties charge. During her testimony, she relied on her notes from her various meetings with Newborn at the jail. She testified that her normal practice is to walk through an entire plea agreement with a client, and though she did not remember the specifics of discussing this particular plea agreement, she had no reason to believe she had not done so with Newborn.

Despite his allegations to the contrary in his K.S.A. 60-1507 motion, Newborn testified that he entered his plea because he wanted to take responsibility for his actions, not because he was coerced by his counsel. But he started have second thoughts when he saw his codefendants received shorter sentences. He explained:

> "I pleaded guilty because—because I been a man and took care of my responsibility, and I thought as a man I should own—if I did wrong, I should face what I did. But when I looked at the transcripts and I seen that everybody was sentenced differently, I'm, like, why is they getting probation and one is getting 30 months when he was looking at 96 months and they gave him a lower sentence or lower case than what this case was about."

Having reviewed the transcript of the evidentiary hearing and the parties' arguments, we conclude the district court's findings are supported by substantial competent evidence. Trial counsel's testimony—which the court credited—demonstrated that she did not provide deficient representation leading up to Newborn's plea. And Newborn's regret in entering the plea because his codefendants received shorter sentences than he did does not render his counsel's performance deficient. Nor does it support his argument that he was coerced into entering his plea.

Rather, the court at the plea hearing discussed the proceedings generally, his counsel's representation, and the details of the plea with Newborn before accepting his plea. Newborn stated that he understood the agreement, had talked it through with his attorney, and was entering into the agreement knowingly and voluntarily. Indeed, Newborn concedes that he "received a beneficial plea agreement although he did not want to enter a plea to such a lengthy term of imprisonment."

The district court did not err in denying Newborn's claim that his counsel coerced his guilty plea or otherwise provided deficient performance leading to that plea.

2. *The district court did not err in summarily denying Newborn's other claims in his K.S.A. 60-1507 motion.*

Newborn's motion also stated three claims of ineffective assistance of counsel that were not presented at the evidentiary hearing—that his attorney waived his preliminary hearing without his consent, that counsel's repeated requests for continuances during plea negotiations caused him to waive his speedy-trial rights without his consent, and that the motion she filed seeking a departure sentence was inadequate. The district court determined that an evidentiary hearing was not necessary to decide these claims. Instead, the court concluded the motions, files, and record conclusively showed Newborn was not entitled to relief. See K.S.A. 2019 Supp. 60-1507(b).

Though our review is unlimited as to the district court's summary denial of these claims, we agree with the court's conclusion. As a preliminary matter, the district court correctly found that by pleading guilty, Newborn expressly waived his pretrial rights and defenses, including the allegations he now raises regarding his pretrial hearing and speedy-trial rights. See K.S.A. 22-3208(4); *State v. Edgar*, 281 Kan. 30, Syl. ¶ 7, 127 P.3d 986 (2006) (guilty plea waives any pretrial defenses or claims regarding irregularities in the pretrial process); see also *State v. Lee*, 266 Kan. 804, 807, 977 P.2d 263 (1999) (finding of guilt renders moot any claim of error from the preliminary

9

hearing); *State v. Rodriguez,* 254 Kan. 768, Syl. ¶ 2, 869 P.2d 631 (1994) (guilty plea waives right to speedy trial). Thus, Newborn cannot present those claims by way of a K.S.A. 60-1507 motion.

But even absent this procedural defect, we would conclude the court correctly denied these claims. With regard to his preliminary-hearing allegations, our review of the transcript demonstrates the court specifically informed Newborn of the consequences of his waiver of his preliminary hearing, and Newborn personally waived his right to that proceeding on the record. And Newborn fails to explain how the waiver of his preliminary hearing prejudiced his case going forward. The court did not err when it denied Newborn's claim.

Newborn's speedy-trial claim is similarly without merit. Kansas courts have found that a statutory speedy-trial claim may not be raised for the first time in a K.S.A. 60-1507 motion. See K.S.A. 2019 Supp. 60-1507(b); Supreme Court Rule 183(c)(3) (2020 Kan. S. Ct. R. 223-24) ("A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."); *State v. Swisher*, 281 Kan. 447, 449, 132 P.3d 1274 (2006) ("A K.S.A. 60-1507 motion is not typically an acceptable vehicle for a nonconstitutional claim of error that could have been addressed on direct appeal."). And as the district court observed, K.S.A. 2019 Supp. 22-3402(g) states that all requests for a continuance "shall be charged to the defendant regardless of the reasons for making the request" for purposes of a defendant's statutory speedy-trial rights. Newborn has not alleged any deficient performance by his counsel that would allow us to review his claim; rather, he recognizes that in requesting continuances, counsel was seeking additional time to negotiate a beneficial plea deal.

10

Finally, the court did not err in summarily denying Newborn's claim alleging he received ineffective representation at sentencing. Newborn argues that the motion filed by his counsel seeking a sentencing departure fell below an objective standard of reasonableness because that motion cited *State v. Smart*, 26 Kan. App. 2d 808, 813-14, 995 P.2d 407 (1999) (pre-*Apprendi* reversal of a district court's upward sentencing departure). Newborn alleges that "[a]ny good attorney would not have used that case for [his or her] client."

The district court properly denied this claim. We note that Newborn's sentence falls within the range of presumptive prison terms under the Kansas Sentencing Guidelines, given his offense and criminal history. Thus, to the extent Newborn is now seeking to collaterally challenge that presumptive sentence, he cannot do so. See K.S.A. 2019 Supp. 21-6820(c) (appellate court has no authority to review a presumptive sentence under the guidelines); *State v. Sprung*, 294 Kan. 300, 317, 277 P.3d 1100 (2012) (same). Further, our review of Newborn's departure motion shows that his attorney cited *Smart* for the proposition that a defendant's acceptance of responsibility and veracity are appropriate factors for a court to consider at sentencing. The attorney argued that these factors warranted a departure sentence in Newborn's case. Though the sentencing court denied the departure motion, the court observed that Newborn's counsel had done "a good job . . . in terms of identifying issues . . . to consider for departing." In short, Newborn has failed to demonstrate his counsel's departure motion constituted deficient performance.

Having thoroughly reviewed the motions, transcripts, and record before us, we conclude the court did not err in denying Newborn's motion under K.S.A. 60-1507.

Affirmed.

11