NOT DESIGNATED FOR PUBLICATION

No. 125,381

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BENJAMIN R. BURDICK,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Cherokee District Court; ROBERT J. FLEMING, judge. Submitted without oral argument. Opinion filed June 20, 2025. Affirmed.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Benjamin R. Burdick appeals the Cherokee County District Court's denial of his K.S.A. 60-1507 motion after an evidentiary hearing, finding Burdick's trial counsel was not ineffective. On appeal, Burdick argues that the district court erred by denying his claims of ineffective assistance of counsel. After review, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2009, a jury convicted Burdick of five offenses: (1) manufacture of a controlled substance; (2) possession of ephedrine, pseudoephedrine, iodine, and red phosphorous with intent to use the products to manufacture a controlled substance; (3)

1

use of drug paraphernalia; (4) possession of methamphetamine; and (5) possession of drug paraphernalia.

These charges derived from the search of William Costner's trailer home. The facts were established by the panel of this court that decided Burdick's direct appeal. *State v. Burdick*, No. 103,263, 2012 WL 5869433, at *1-2 (Kan. App. 2012). We summarize the relevant parts here. Police officers went to Costner's home, looking for another individual, and were invited to enter. Upon entering, they detected an odor they believed to be related to the manufacture of methamphetamine. When they entered a bedroom where Costner's daughter and her boyfriend, Burdick, had been staying for two weeks, officers found evidence which field tested positive for methamphetamine. In the kitchen, officers found items commonly used in the production of methamphetamine.

Detective Will Perryman told Costner he was securing the residence so he could apply for a search warrant. After reading Costner his *Miranda* rights, the officers agreed that they would not take him to jail if he showed them what was in his house. Costner agreed. He told the officers that Burdick had left a "lye bed" at the house, and he pulled drugs or drug paraphernalia from behind the kitchen cabinets, smoke alarms, an air vent, and the carpet.

Costner later gave a recorded statement that Burdick—with Costner's daughter's help—had manufactured methamphetamine twice in his house. The Kansas Bureau of Investigation then searched Costner's residence with a warrant and found an envelope addressed to Burdick and items related to the manufacture and use of methamphetamine in the south bedroom.

At trial, Burdick denied that he lived at Costner's residence and claimed that none of the items discovered during the search were his. The jury did not believe him and found him guilty as charged. Burdick was sentenced to 186 months in prison.

*Burdick's 60-1507 Motion*

After Burdick's direct appeal was denied, Burdick filed the K.S.A. 60-1507 motion, and six motions to amend it, that give rise to this appeal. His multiple motions to amend, continuances, and numerous substitutions of counsel delayed a resolution of this motion so it was over eight years until the district court held an evidentiary hearing.

The district court found that the eight issues raised in the K.S.A. 60-1507 motion and the later motions to amend all asserted that Burdick's trial counsel was ineffective. We mention only the two issues that Burdick raises in this appeal: (1) failure of trial counsel to attack the veracity of the probable cause affidavit supporting Burdick's arrest warrant under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); and (2) failure to move to suppress evidence from the search of Costner's home.

*The* Franks *Motion*

Burdick's 60-1507 motion argued his trial counsel was ineffective for failing to file a *Franks* motion to suppress attacking the veracity of the affidavit supporting his arrest warrant because the supporting affidavit was supported by alleged falsities provided by Costner to law enforcement. He broke these arguments down into three categories: False information contained in the affidavit, material omissions, and statements that are a reckless disregard for the truth.

He argues that because of these issues with the underlying affidavit, the warrant was not reliable, so the magistrate judge was misled when issuing the arrest warrant. Burdick argues his trial counsel's deficient performance prejudiced him because had there been a *Franks* motion filed, the affidavit would have been discredited, and thus, he would not have been arrested and subsequently convicted.

*The Motion to Suppress*

Second, Burdick argued his trial counsel was ineffective for failing to move to suppress the evidence derived from Costner's trailer home. Burdick argued Costner's consent to the search was ineffective because: (1) he was under the influence of drugs at the time of the consent, and thus mentally incapacitated; (2) the consent was gained through police perjury and false pretenses because law enforcement told Costner they had a warrant to search the residence for Kirkland, but Burdick alleges they did not; and, (3) the consent was gained by means of fear or threat because Costner expressed he was afraid to go to jail. Burdick further asserts that Costner's immunity undermined the veracity of his testimony regarding his consent.

His motion does not clearly argue how counsel's failure to file this motion prejudiced him, but it does argue:

> "The prejudice to the petitioner begins with the police exceeding the visual inspection, scope of limited search, searching for evidence of drug manufacturing outside of their [original] purpose of entry, which led to a warrant issued, later discovery of evidence[], arrest of Burdick, his trial, and then conviction and imprisonment."

*The Evidentiary Hearing*

The district court took judicial notice of the records from Burdick's criminal case and two people testified at the evidentiary hearing—Burdick and Samuel Marsh, Burdick's trial counsel.

Marsh testified that he had been practicing law since 1990. Marsh was previously a prosecutor in Cherokee County and had a general practice, at which he did "quite a bit" of criminal defense work. Marsh recounted that, as a matter of practice, he always made evaluations of the types of pretrial motions to file to determine which motions were

4

appropriate. He testified that he ensured all the motions he filed were not frivolous and were something that had evidentiary and legal support.

He conceded that his memory of the facts of the case "would certainly have been better" at the time of the case, and by the time of the evidence hearing, 13 years had passed since the trial. Still, he recalled his trial strategy, which was developed in consultation with Burdick, was to argue that the residence in which the drug use and manufacturing evidence was located was not Burdick's residence, so the evidence could not be linked to him.

He testified he did not move to suppress the evidence derived from Costner's home because he believed Burdick did not have standing to file such a motion since it was not his home. He agreed that if the evidence against Burdick found in Costner's home would have been suppressed it would have negatively impacted the State's ability to move forward with the case against Burdick.

As for the *Franks* motion, the testimony was limited. Marsh testified that he did not file a *Franks* motion because his understanding of the case was that Costner gave officers permission to search the house and showed officers where incriminating items were located throughout the home. In other words: "The officers came looking for someone else and Costner just basically gave everything up to them." So officers had already been shown the location of all the items before they secured the warrant.

The district court judge asked Marsh if Burdick agreed to not file a *Franks* motion and Marsh responded: "As far as I know we had discussions about the trial. We had plea negotiations. So as far as I can recall. I don't really recall specific as all of this; it's been too long ago."

Burdick also testified at the evidentiary hearing. He first discussed his desire to have a *Franks* motion filed. He highlighted that there were errors in the affidavit to support probable cause. For example, he argued that the affidavit says there was a mirror and tin in the south bedroom that had residue on it that field tested positive for methamphetamine. But, allegedly, there were no evidence custody receipts for the mirror or the tin. He testified it was his belief that because police did not seize these items as evidence and there was no record of the field test, the evidence was fabricated by law enforcement.

Regarding a motion to suppress the evidence derived from Costner's residence, Burdick testified that he believed his trial counsel should have moved to suppress because police were not initially looking for him when they approached Coster. He asserted in his testimony that law enforcement gained access to the home by threat or deceit. Burdick elaborated:

> "They're claiming that the officer said that Costner gave consent. But if you looked at Costner's testimony it says that the officers told him they had a warrant to search for Kyle Kirkland. And he didn't actually give consent. And that was the reason he invited—or allegedly invited them into his home. He said that they told him that they had a warrant.
> "[MARSH]: They tricked him?
> "[BURDICK]: Right. Yeah. And that's also in the transcripts."

Burdick also testified that he did not live at Costner's home and that his permanent residence at the time was in Pittsburg. He asserted that the drugs, drug manufacturing materials, and other paraphernalia seized from Costner's home were not his.

*The District Court's Order Denying the 60-1507 Motion*

After taking the matter under advisement, the district court denied Burdick's motion.

The district court's order is scant in factual findings. Reading carefully, it appears the district court found that Marsh's trial strategy was discussed with Burdick and that the strategy was to deny that all the items found belonged to him because it was not his permanent residence. The district court found that it was only after that trial strategy was ineffective that Burdick believed a *Franks* motion and a motion to suppress should have been filed.

The district court held:

> "Given that the residence was owned by William Costner and that he freely consented to a search of his residence and freely and voluntarily incriminated [Burdick], this court concludes that whether Mr. Marsh had filed a *Franks* motion or a motion to suppress the [j]ury's verdict would have been the same. At [trial] Mr. Costner explained that law enforcement came to his residence expressing that they were looking for 'some young kid. They thought he was hanging out at my trailer. And they said they had a warrant for—to look for him so I let them in. And of course they smelled the smell of everything in my trailer. Q. What smell was that? A. Meth. Cooking meth.' [He also] testified [at trial], 'I told him, I told him Benny was—I allowed Benny to stay there, uh, to use my place to cook meth.' Benny is Benjamin Burdick.
>
> "Nowhere in the trial record is there evidence to support a contention that William Costner's consent or his statements to law enforcement that [Burdick] was cooking meth in his residence was coerced by law enforcement. This court concludes that it was voluntary and would have been admitted irrespective of a *Franks* motion to suppress."

The district court concluded, "the Court finds that [Burdick's] contentions lack merit and that he was, in fact, provided with effective assistance of counsel. Not obtaining the desired result does not equate to inefficiency."

Burdick now timely appeals.

ANALYSIS

*Did the district court err by denying Burdick's K.S.A. 60-1507 motion?*

*Standard of Review and Legal Maxims*

A district court has three options when handling a K.S.A. 60-1507 motion: summarily deny the motion, hold a preliminary hearing, or hold a full evidentiary hearing. Our standard of review depends on which of these three options a district court exercised. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). Here, the district court held a full evidentiary hearing on Burdick's motion, so we review the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Substantial competent evidence refers to legal and relevant evidence a reasonable person could find adequately supports a conclusion. *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). Appellate review of the district court's conclusions of law is de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

On appeal, Burdick argues that the district court erred in denying his K.S.A. 60-1507 motion because his trial counsel was ineffective for not moving to suppress and not filing a *Franks* motion.

An appellate court analyzes claims of ineffective assistance of trial counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). The movant has the burden to show that defense counsel's performance was deficient and to show a reasonable probability that absent defense counsel's errors, the outcome of trial would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022).

To establish deficient performance under the first prong, the movant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. When considering a claim of ineffective assistance of counsel, appellate courts must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance. That is, the movant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami*, 313 Kan. at 486.

Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

*The Motion to Suppress*

Burdick's brief mentions in passing that his counsel failed to move to suppress the items found in Costner's trailer, stating "[t]his appeal relates to failure of trial counsel to file a *Franks v. Delaware* motion and motion to suppress." But this mention does not equate to proper briefing of the issue. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (holding point raised incidentally in a brief and not argued therein is deemed waived or abandoned). Issues not adequately briefed are deemed waived and abandoned.

9

*In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). And Burdick cites no law in support of his assertion that his counsel was ineffective for failing to move to suppress. Failure to support a point with pertinent authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). We thus find this issue improperly briefed and do not consider its merits.

*The* Franks *Motion*

Burdick argues that his trial counsel was ineffective for failing to file a *Franks* motion challenging the veracity of the probable cause affidavit supporting his arrest warrant. In his motion he tacitly argued that had trial counsel filed this motion, the outcome of his trial would have been different because the government should not be permitted to benefit from its own misconduct. On appeal, he asserts the failure to file a *Franks* motion "was prejudicial to the degree Burdick was denied a fair trial."

Burdick's brief cites only one case in support of this assertion—*Franks*, 438 U.S. 154. None of Burdick's points argued on appeal are supported with any authority. And "[s]imply pressing a point without pertinent authority is akin to failing to brief an issue, and, when an appellant fails to brief an issue, the issue is deemed waived or abandoned." *State v. Rupnick*, 280 Kan. 720, Syl. ¶ 12, 125 P.3d 541 (2005). We thus would likely be on good grounds to find this issue waived as well.

But even if we excuse the insufficient briefing and treat Burdick's 60-1507 motion as the brief, we find that the district court properly denied the motion because Burdick shows no deficient performance by counsel.

An affidavit in support of a search warrant is presumed valid, and in most cases, the facts contained in it cannot be disputed by the party against whom the warrant is directed. See *Franks*, 438 U.S. at 171. There is a limited exception to this presumption.

10

An evidentiary hearing is required if a defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable because it: (1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements were a deliberate falsehood, were made in reckless disregard for the truth, or deliberately omitted a material fact. Allegations of negligence or innocent mistakes are insufficient. 438 U.S. at 155-56, 171; *State v. Francis*, 282 Kan. 120, 129, 145 P.3d 48 (2006); *State v. Schoonover*, 281 Kan. 453, 513, 133 P.3d 48 (2006).

When attacking the affidavit, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false[,] and a statement of supporting reasons should accompany the motion to suppress." *State v. Jacques*, 225 Kan. 38, 44, 587 P.2d 861 (1978) (citing *Franks*, 438 U.S. at 171). Burdick's motion tries to belatedly meet this burden by asserting that various statements in the affidavit were falsehoods, reckless disregards for the truth, and deliberate omissions of material facts. He complains of Costner's statements to law enforcement, factual inaccuracies based on his assertions he was in drug treatment on the alleged dates, and omissions of evidence irrelevant to the finding of probable cause (such as facts that could not have been known when the arrest warrant was granted).

But these challenges to the affidavit are not about statements made by a government agent. A defendant is entitled to a *Franks* hearing only when the affiant whose statements are being challenged is a government agent. *State v. Jensen*, 259 Kan. 781, 789, 915 P.2d 109 (1996).

> "The exception to the general rule applies only where the affiant is a government agent and the defendant's challenge is supported by sworn allegations that false statements made knowingly, intentionally, or with reckless disregard for the truth were included in the affidavit, and the false or reckless statement is necessary to the finding of

probable cause. If the exception applies, then the defendant is entitled to a *Franks* hearing." 259 Kan. at 789.

Because *Franks* does not apply to statements made by non-government informants, Burdick was not entitled to a *Franks* hearing. Any such motion was thus likely to fail.

Burdick's trial counsel's decision to not litigate this motion was objectively reasonable. See *Khalil-Alsalaami*, 313 Kan. at 507. Without deficient performance there can be no ineffective assistance of counsel, so the district court properly denied Burdick's 60-1507 motion.

Although the district court did not deny Burdick's motion on this ground, the reason for its decision is immaterial if its ruling is correct for any reason. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997) (holding "a trial court's reason for its decision is immaterial if the ruling is correct for any reason"); see also *Edwards v. State*, 29 Kan. App. 2d 75, 77, 25 P.3d 142 (2001) (applying *KPERS*, 262 Kan. 110, in the context of a 60-1507 motion). The district court correctly denied Burdick's K.S.A. 60-1507 motion.

Affirmed.